VISICORP, Plaintiff,

v.

SOFTWARE ARTS, INC., et al., Defendants.

No. C–83–20299–WAI.

United States District Court, N.D. California.

Dec. 19, 1983.

Edmond C. Gregorian, Fenwick, Stone, Davis & West, Palo Alto, Cal., for plaintiff.

Theodore E. Orliss, Schroeder & Davis, Inc., Monterey, Cal., J. Thomas Lenhart, P.C., Philip J. Harvey, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for defendants.

1. On November 4, 1983, defendants filed another self-styled document entitled "Supplemental Bond" containing language of surety and signed by their principals. Because of the disposition

## ORDER

INGRAM, District Judge.

Plaintiff VISICORP, a California Corporation, moves to remand this action to state court on the basis of alleged defects in the removal petition. Defendants SOFTWARE ARTS, INC., and SOFTWARE ARTS PRODUCTS, INC., both Massachusetts Corporations, seek dismissal or alternatively to transfer the case to Massachusetts pursuant to a forum selection clause contained in an agreement between the parties.

The parties are engaged in the development and marketing of computer software. In 1979, VISICORP, through its predecessor company, Personal Software, Inc., a Massachusetts Corporation, entered into an agreement with SOFTWARE ARTS, INC., whereby the latter granted plaintiff an exclusive license to reproduce and sell the "VisiCalc" software program for the Apple II personal computer in exchange for royalties received pursuant to sales and other transactions in which plaintiff might become involved concerning "VisiCalc." The complaint, filed in October, 1982, in Santa Clara county superior court, San Jose, California, essentially charges defendants with violating the 1979 Agreement and seeks damages and declaratory relief under theories of breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation.

### I. *Propriety of Removal*

Defendants are alleged to have improperly removed this action because 1) they failed to provide a proper removal bond and, 2) they failed to provide plaintiff with copies of discovery propounded in the state court from which this case was removed.

Defendants herein timely filed with this Court their Verified Petition for Removal, cash in the amount of $250.00, and a self-styled document entitled "Notice of Filing Cash in Lieu of Removal Bond." [1] Paragraph 8 of the Verified Petition states:

herein, the Court declines to pass upon this apparent attempt at strict compliance with the Local Rules, albeit untimely.

Defendants ... are filing herewith, attached as Exhibit B, a $250.00 cash bond with good and sufficient surety conditioned, as provided by 28 U.S.C. § 1446(d), that they will pay all costs and disbursements incurred by reason of the removal proceedings hereby brought should it be determined that the case was not removable or was improperly removed.

Removal is governed by 28 U.S.C. § 1441, *et seq.*, and removal bonds by 28 U.S.C. § 1446(d), which provides:

Each petition for removal of a civil action or proceeding, except a petition in behalf of the United States, shall be accompanied by a bond with good and sufficient surety conditioned that the defendant or defendants will pay all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed.

Local Rule 290–2(d) of the United States District Court for the Northern District of California allows the posting of a cash deposit provided a bond is signed by the principals of the removing defendants. The bond shall be in the amount of $250.00. Local Rule 290–4.

■■■ The intent of § 1446(d) seems rather clear: a removing defendant shall bear the ultimate financial responsibility for improvident removal. The terms used to convey this intent are equally clear. A "bond" is simply a sum of money as bail or surety. "Good and sufficient surety" is simply a pledge or formal promise made to secure against default. This Court sees no reason why cash lodged with the Clerk of the Court, a record of which has been recorded by the Clerk's financial section, and deposited in a separate interest bearing bank account under the name of "Clerk, U.S. District Court," together with the statement in the Petition for Removal, quoted herein, fails to comply with § 1446(d). The Court further finds that Local Rule 290–2(d), interpreted in light of commonly accepted agency principles and the reality that counsel herein have at least the apparent authority to act to remove this action and to do so correctly, does not bar an attorney from signing an instrument of surety, such as the Petition for Removal on file herein, in place of his client.[2]

Plaintiffs have vigorously opposed this Court's adoption of any good faith, substantial compliance standard. However, the cases they have cited against the conclusion arrived at herein instead appear to support it. In *Proteus Foods and Industries, Inc. v. Nippon Reizo Kabushiki Kaisha,* 279 F.Supp. 876 (S.D.N.Y.1967), the trial court found that a certified check entitled "Bond for Removal" did not constitute a bond within the meaning of § 1446(d). Defendant therein had supplied no references to the check's purpose other than that indication, nor did any language of surety appear referenced to the removal petition. In *Kurt Orban Co. v. Universal Shipping Corp.,* 301 F.Supp. 694 (D.Md. 1969), the court rejected as inadequate documents entitled "Cost Bonds on Appeal" which erroneously designated the parties to the action and gave no reference to their purpose as, presumably, to cover the costs of improper removal. Other than citing *Proteus Foods, supra,* and reflexively stating that removal statutes are to be strictly construed, that decision provides little help. At most, the "bond" was so factually disoriented, and contained no language as to conditioning payment for improvident removal, that it did not even vaguely satisfy § 1446(d).[3] In *Beecher v. Smithson,* 217 F.2d 304 (9th Cir.), *cert. denied,* 349 U.S. 945, 75 S.Ct. 873, 99 L.Ed. 1271 (1954), the Court held that a *pro se* bankrupt appellant's personal check "payable under protest" and sent to the Clerk of the Court

---

2. Because the Court finds that Local Rule 290–2(d) does not preclude attorneys' signatures under these facts, it does not confront the question of whether, under other situations, the local rule may be in conflict with 28 U.S.C. § 1446(d),

and may therefore be invalid. *See,* Local Rule 100–4.

3. At the least *Proteus* and *Orban* appear erroneous, see, 14 Wright, Miller and Cooper, Fed. Practice and Procedure, § 3735 n. 5.

was an insufficient appeal bond. No comment is needed to distinguish *Beecher* from the instant case. Finally, in *Austin v. Gagan*, 39 F. 626, 627, 628 (N.D.Cal.1889), the removal "bond" filed "... contained no amounts of money, an unfilled blank having been left so that it did not appear for what money the obligors were bound." Indeed, the implication is that the bond may have been sufficient had there been some reference to satisfying the removal statutes by a fixed amount.

■ Plaintiff also contends that removal is improper because defendants failed to file with their removal petition all discovery and discovery requests[4] from the state court action. This contention is meritless.

28 U.S.C. § 1446(a) provides:

A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is *pending* a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all *process, pleadings and orders* served upon him or them in such action. (Emphasis added.)

Discovery such as that which plaintiff argues should be filed herein simply does not constitute process, pleadings or orders. Whether or not such discovery is lodged with the state court, it is not a matter which remains with any force or effect after removal. *See,* 28 U.S.C. § 1450. Both §§ 1446(a) and 1450 contemplate an avoidance of duplicity by the federal court of the state court's efforts, not the parties. There is no reason to stretch the clear meaning of the words embodied in § 1446(a) to include the discovery subject to plaintiff's argument.

## II. Forum Selection Clause

Paragraph 18e of the 1979 Agreement between the parties, duly executed by their principals, provides:

*Massachusetts Law and Jurisdiction.* This Agreement shall be governed and interpreted in accordance with the laws of the Commonwealth of Massachusetts. The parties agree that any dispute arising under this Agreement should be resolved in the State or Federal Courts of the Commonwealth of Massachusetts and Owner [defendant] expressly consents to jurisdiction therein.

Plaintiff resists the instant motion on the grounds that Massachusetts law controls venue determination and that Massachusetts does not enforce forum selection clauses. In the event that Massachusetts courts would enforce the clause, plaintiff contends that defendants nevertheless carry the burden of proving transfer to that state is in the interests of justice and furthers the convenience of the parties and witnesses, as they would under 28 U.S.C. § 1404(a), and that they have failed to do so.[5]

The first and foremost question presented is whether federal or state law controls venue. Under the *Erie* doctrine, it is axiomatic that a federal court sitting in diversity shall apply the law of the forum state, here California. California's choice of law rules would probably defer to Massachusetts pursuant to the Agreement's choice of law provision.[6] Under this scenario, there is some dispute as to whether the

---

4. Plaintiff contends that defendants should have filed along with all other removal papers plaintiff's First Set of Interrogatories, First Request for Production of Documents and notices of depositions dated about October 11, 1983.

5. Plaintiff also contends that transfer under 28 U.S.C. § 1406(a) is inappropriate, and that if the forum selection clause is found enforceable, it should be granted additional time to obtain discovery on transfer issues. The disposition herein obviates the first of these issues and disposes of the second.

6. *See, e.g., Gamer v. Dupont Glore Forgan, Inc.,* 65 Cal.App.3d 280, 286, 135 Cal.Rptr. 230 (1976) (following more liberal view of Rest.2d, Conflict of Laws § 187(1) and (2).) There may be some argument that the choice of law/forum selection clause is a matter of contract law, not venue. *See, Taylor v. Titan Midwest Const. Corp., supra,* 474 F.Supp. at 147, n. 2. However, because neither party has raised this question and due to the rule followed herein, the Court declines to spar with it.

clause is enforceable. *Cf., Nashua Paper Co. v. Hammermill Paper Co.*, 223 Mass. 8, 111 N.E. 678 (1916), with *Diversified Mortgage Investors v. Viking Investment Co.*, 16 Mass.App. 142, 450 N.E.2d 176, 179 (1982) and *Morris v. Watsco, Inc.*, 385 Mass. 672, 433 N.E.2d 886, 888 (1982). Thus, employing federal over state law respecting the enforceability of the clause may create an undesirable result under the outcome-determinative test of *Byrd v. Blue-Ridge Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), at least insofar as venue is concerned. However, it would be sheer speculation as to whether the final outcome of this action would differ were the action to be held in California or Massachusetts. Moreover, because Massachusetts' law has been chosen to mediate the dispute, the substantive law result would be the same irrespective of the forum actually litigated. *Cf., Taylor v. Titan Midwest Const. Corp.*, 474 F.Supp. 145, 147 (N.D.Tex.1979).

■ Despite some conflict in the courts, *see, Titan, supra,* at 147, and cases cited therein, this Court holds that federal law controls venue under these facts. With all deference to the interests the State of Massachusetts may have in supervising its citizens' lawsuits, the federal courts have a prevailing concern over uniformity. *See, Northeast Theatre Corp. v. Edie and Ely Landau, Inc.*, 563 F.Supp. 833, 835 (D.Mass.1983), citing *Taylor v. Titan Midwest Const. Corp., supra,* 474 F.Supp. at 147.

■ The next question is whether the clause is enforceable. The benchmark is *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972), an admiralty action wherein the Court codified the prevailing view that contractual venue selection provisions are "... [*prima facie*] valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."

Some effort has been expended by plaintiff to confine *The Bremen* to admiralty cases or matters of international scope. *See, e.g., Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627 (9th Cir. 1982) (Admiralty; England forum); *Crown Beverage Co. v. Cerveceria Moctezuma*, 663 F.2d 886 (9th Cir.1981) (Mexico forum); *Republic International Corp. v. Amco Engineers, Inc.*, 516 F.2d 161 (9th Cir.1975) (Uruguay forum); *Paterson Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A.*, 493 F.Supp. 626 (S.D.N.Y.1980) (Japan forum). *See, generally, Cruise v. Castleton, Inc.*, 449 F.Supp. 564, 56 (S.D.N.Y. 1978) ("It is far from clear, however, whether a court sitting in diversity should follow *The Bremen*'s approach towards forum-selection clauses or whether, by virtue of the *Erie* doctrine, it must apply state law ...")

■ However, this Court is persuaded that *The Bremen* controls suits founded upon diversity jurisdiction as well. The Court seemed to rely upon at least two non-maritime, domestic disputes in its decision, both on the merits and in granting *certiorari.*[7] Further, well-reasoned recent opinions hold that *The Bremen* should apply equally to diversity cases. *See, Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 569 F.Supp. 612, 614 (C.D.Cal. 1983) (Tashima, J., "Given the [*Bremen*] standard for testing the enforceability of an international forum selection clause, the enforceability and reasonableness of a domestic forum selection clause ... would appear to be an *a fortiori* case."); *Taylor v. Titan Midwest Const. Corp., supra,* 563 F.Supp. at 148; *Northeast Theatre Corp. v. Edie and Ely Landau, Inc.*, 563 F.Supp. 833, 834 (D.Mass.1983); *C. Pappas Co., Inc. v. E. and J. Gallo Winery*, 565 F.Supp. 1015, 1017 (D.Mass.1983).

■ Finally, the Court holds that matters of convenience should not be considered in determining whether to enforce

---

7. *See,* 407 U.S. at 10, n. 11, 92 S.Ct. at 1913, n. 11, *citing, Central Contracting v. Maryland Casualty Co.*, 367 F.Supp. 341 (3rd Cir.1966), and *Central Contracting Co. v. C.E. Youngdahl and Co.*, 209 A.2d 810, 418 Pa. 122 (1965).

the forum selection clause. *The Bremen* is again instructive:

> Of course, where it can be said with reasonable assurance that at the time they entered into the contract, the parties to a freely negotiated private ... commercial agreement contemplated the claimed inconvenience, it is difficult to see why such claim of inconvenience should be heard to render the forum selection clause unenforceable.... 407 U.S. at 16, 92 S.Ct. at 1916.

In *Pelleport, supra,* the party resisting the forum selection clause asserted arguments similar to plaintiff's herein, but to no avail. This Court is equally unpersuaded. The parties executed the subject agreement over four years ago, and both were at that time .residents of Massachusetts. In the absence of evidence that the agreement was procured by fraud, overreaching, or was the product of unequal bargaining abilities, the Court will not endeavor to correct a problem created by plaintiff when it decided to move out of the previously and otherwise fairly selected forum.

The final question is whether dismissal or transfer is appropriate. This Court adopts the modern view that transfer is correct, following the *Bremen* Court's view that enforcement of a forum selection clause should not oust a court of jurisdiction. *See, C. Pappas Co., Inc., supra,* at 1018.

### III. .Conclusion

This action has been properly removed. Federal law controls venue herein. The forum selection clause contained in the 1979 Agreement between the parties is valid and enforceable. Pursuant to the agreement, venue for this dispute lies in Massachusetts. Accordingly, plaintiff's motion to remand is DENIED. Defendants' motion to transfer is GRANTED. This action is HEREBY ORDERED TRANSFERRED. The Clerk of the Court is hereby DIRECTED to transfer this action to the United States District Court, District of Massachusetts.